[Crim. No. 722. Second Appellate District, Division Two.—July 9, 1920.]

In the Matter of the Application of CHARLES L. STONE for a Writ of Habeas Corpus.

[1] MUNICIPAL CORPORATIONS—REGULATION OF OPERATION OF ELEVATORS—LICENSING OF OPERATORS.—An elevator being a dangerous instrumentality unless properly managed, it is within the province of a city council to safeguard the public against injury resulting from the incompetency of those who are to be entrusted with the operation thereof; and to that end it may impose reasonable restrictions upon the right to enter that employment, by requiring

a person seeking to engage therein to procure a certificate that he is skilled in that class of work.

[2] ID.—LOS ANGELES—CREATION OF BOARD OF MECHANICAL ENGINEERS—USURPATION OF POWERS OF BOARD OF PUBLIC WORKS.— The ordinance of the city of Los Angeles providing for the creation of a board of mechanical engineers, to be appointed by the city council, and prescribing, among other things, that it shall be unlawful for any person to operate an elevator without first obtaining a license from such board, in so far as it provides for the licensing of elevator operators by the board of mechanical engineers, is not in conflict with the provision of section 147 of the charter of that city giving the board of public works charge of the "use and operation of all . . . electrical and mechanical appliances" in buildings and structures in that city.

[3] ID. — APPOINTMENT OF BOARD BY CITY COUNCIL — VIOLATION OF CHARTER—ABSENCE OF.—Such ordinance, in providing for the appointment of the board of mechanical engineers by the city council instead of by the mayor, does not violate the charter of the city of Los Angeles or invade the jurisdiction of the mayor.

PROCEEDING in Habeas Corpus to secure the release of petitioner from custody after conviction of violation of a city ordinance. Writ discharged and petitioner remanded.

The facts are stated in the opinion of the court.

Lawler & Degnan for Petitioner.

Erwin W. Widney, City Prosecutor, J. D. Taggart, Deputy City Prosecutor, and Emmett H. Wilson, for Respondent.

WELLER, J.—Petitioner was charged with operating an elevator without a license, in violation of an ordinance of the city of Los Angeles. He now seeks to be discharged from imprisonment following conviction and sentence, claiming the ordinance to be void.

The ordinance in question provides for the creation of a board of mechanical engineers, to be appointed by the city council, and prescribes, among other things, that it shall be unlawful for any person to operate an elevator without first obtaining a license from such board. It is contended that the ordinance is void, because (1) the powers of the board of mechanical engineers, as set forth in the ordinance, encroach upon the duties of the board of public works, as fixed by the charter, and (2) the ordinance provides for the

appointment of the board of mechanical engineers by the city council instead of by the mayor.

1. Section 147 of the charter is as follows: "The Board of Public Works shall have charge of the enforcement of all ordinances relating to the construction, alteration, repair, demolition or removal of buildings and structures in the city; and of the arrangement, alteration and repair, use and operation of all heating, plumbing, lighting, ventilating and electrical and mechanical appliances therein." Counsel concedes in his argument that it is within the powers of the municipality to require that an elevator operator should be subjected to tests to ascertain his proficiency, and should procure a license to pursue his calling. But, petitioner argues, the expression "use and operation" includes the human as well as the mechanical agency by means of which the use and operation is accomplished, and that, under the provisions of the charter above quoted, the jurisdiction to examine and license operators should therefore be vested in the board of public works. Admitting that the operator while engaged in the performance of his duties should be held to be within the purview of the charter, it does not follow that the legislative body of the city may not prescribe the conditions under which he may be eligible to employment in that capacity. [1] An elevator is a dangerous instrumentality, unless properly managed; and it is within the province of the council to safeguard the public against injury resulting from the incompetency of those who are to be entrusted with the operation of elevators. To that end it may impose reasonable restrictions upon the right to enter that employment, by requiring a person seeking to engage therein to procure a certificate that he is skilled in that class of work. Such a limitation does not relate to the "use and operation" of the appliance, but is in the nature of a condition precedent to such use and operation.

[2] The charter provides (section 41) that the mayor shall be "vigilant and active in the enforcement of the ordinances of the city," and (section 50) that he shall appoint the city prosecutor, who shall be qualified to practice in all the courts of the state. It could not be successfully contended that the court which admitted the city prosecutor to the bar was invading the jurisdiction of the mayor, or that

48 Cal. App.—30

the mayor should be vested with the power to admit him, in order to qualify him for the appointment.

We therefore conclude that the ordinance, in so far as it provides for the licensing of elevator operators by the board of mechanical engineers, is not in conflict with the charter provision regarding the duties of the board of public works.

[3] 2. In support of his contention that the power of appointment of the board of mechanical engineers should be lodged in the mayor instead of in the council, as provided by the ordinance, petitioner compares some of the old provisions of the charter with the amendments. He attempts to show that by such amendments all appointive power was vested in the mayor, and, by implication, taken away from the council. It is true that some of the officers of the city who were formerly appointed by the council were, by amendments, placed within the jurisdiction of the mayor. The question then arises, Do such amendments indicate an intention on the part of the electorate of the city to remove all power of appointment from the council?

Section 2, subdivision 23, of the charter, in enumerating the powers of the city, provides: "The City of Los Angeles, in addition to any other powers now held by, or that may hereafter be granted to it under the constitution or laws of the state, shall have the right and power: . . . To provide for the election or appointment of officers other than those designated in this charter, whenever the public necessity or convenience may require, and prescribe their duties and fix their compensation; *provided,* that such duties shall not include any of the duties of any officer designated in this charter, or of his deputies or assistants." Section 6 reads as follows: "The Mayor shall appoint a Clerk of the Mayor, the Chief of Police, the Chief Engineer of the Fire Department, and the Health Commissioner. He shall also appoint, subject to confirmation by a majority of the council, the officers of the municipality mentioned in this charter whose appointments are not otherwise specifically provided for herein." Petitioner argues that by the use of the words "mentioned in this charter" the framers of the charter meant to include, not only those officers designated by title, but also such as might be created under the grant of power contained in subdivision 23 of section 2; and that if it had not been intended to include subsequently created offices, the section should have provided for the appointment by the

mayor of the officers named in the article of which section 6 is a part, and thus limit the appointive power of the mayor to the officers specifically named in that article. We do not attach so much significance to the changes in the method of appointment made by the amendments. It could as logically be construed that the provisions of the charter were meant to limit the appointive powers of the mayor by specific mention of those subject to appointment by him. The general clause was obviously intended to cover cases where by inadvertence the manner of appointment was omitted, and thus to complete the scheme of filling the places created by the charter. Several of the officers mentioned in article II are by the provisions of subsequent articles to be appointed by other officers or boards, thus demonstrating that it was not the purpose to cast upon the mayor the sole responsibility for the personnel of the officials of the city government.

It is conceded by counsel that the power of appointment may be exercised by the legislative body in the absence of provision to the contrary, but it is claimed that the amendments which took away from the council some of the powers theretofore possessed repel the presumption of any implied power in that respect. We are not in accord with this conclusion. By the terms of the charter, all legislative power is vested in the council (sec. 12), and any intention to abridge that power must be made manifest by express provision to that effect. The power of the council to provide for the appointment of officers is not presumptive or implied, but is derived from the organic law which created the council and defines its authority. No inference of an intent to restrict its power generally is to be drawn from an amendment to the charter which limits its authority in a particular case. Such a provision, being in derogation of its inherent powers, is to be construed strictly according to its expressed terms, and should not be extended by implication beyond its immediate effect.

We are of the opinion that the method of appointment provided by the ordinance does not violate the charter or invade the jurisdiction of the mayor, and that therefore the board of mechanical engineers is a legally constituted body.

Writ discharged and petitioner remanded.

Finlayson, P. J., and Thomas, J., concurred.